## WILLIAMS *v.* JONES.

### Opinion delivered January 28, 1924.

1. MORTGAGES—FORECLOSURE SALE—VALIDITY.—On a motion to set aside a mortgage foreclosure sale for one-fifth less than it was reasonably valued at, *held* that the sale did not amount to a fraud upon the mortgagor's rights.

2. MORTGAGES—IMMEDIATE CONFIRMATION HARMLESS WHEN.— The fact that a mortgage sale was immediately reported to, and confirmed by, the court did not injure the appellants where the court heard their motion to set aside the confirmation and sale as if there had been no confirmation.

Appeal from Lawrence Chancery Court, Eastern District; *Lyman F. Reeder,* Chancellor; affirmed.

*Schoonover & Jackson* and *Block & Kirsch,* for appellant.

We think there was an abuse of discretion in refusing to set aside the confirmation of the sale to Jones. While the inadequacy of the consideration, standing alone, might not have been sufficient to justify the court in setting aside the sale after he had once confirmed it, yet the other circumstances attending the sale cast upon it that suspicion which ought to have moved the court to set it aside on appellant's application. 131 Ark. 397; 117 U. S. 180.

*W. P. Smith,* for appellee.

The record shows that the chancellor was justified in his decision by the evidence. We submit the case upon the authorities cited by the appellant.

HUMPHREYS, J. This is an appeal from an order refusing to set aside a confirmation of a sale of certain land which was sold on the 19th day of September, 1922, to Charles Jones, at public sale under a mortgage foreclosure, wherein Fairbelle Byrkett was petitioner and Williams *et al.* were respondents. The lands in question were sold on May 31, 1921, in the same foreclosure proceeding at which sale Charles Jones purchased them. Later, however, this sale was set aside at the instance of F. E. Williams on the ground of inadequacy of price, and no appeal was taken by Jones from said order. After the sale was set aside Judge W. A. Cunningham loaned F. E. Williams enough money to pay the indebtedness due Fairbelle Byrkett, and, as security, took an assignment of the judgment and decree. Upon failure of F. E. Williams to pay Judge Cunningham the amount advanced, the land was again advertised and sold by the commissioner. At the sale D. O. Williams, brother of F. E. Williams, made the highest bid, same being $1,350, subject to a prior lien or mortgage thereon in favor of Clay Sloan for about $2,600. D. O. Williams was given thirty minutes by the commissioner to make a good and sufficient note to cover his bid. The testimony is conflicting as to whether he returned within the time allowed him. At any rate, during his absence the commissioner again offered the lands at public sale to the highest bidder. Charles Jones was the highest bidder, and became the purchaser for $1,025. He bid against D. O. Williams at the sale made earlier in the afternoon, offering $1,325 therefor. The second sale was immediately reported to the court and confirmed, after which a deed for the lands was executed by the commissioner and delivered to Jones. On October 26 thereafter D. O. Williams and F. E. Williams filed a written motion to set aside the sale and confirmation

thereof, upon the ground that the action of the commissioner in making the second sale amounted to a fraud upon their rights. A response was filed to the motion by appellee, and the issue joined was submitted to the court upon testimony introduced by the respective parties, which resulted in a denial of the motion.

The witnesses introduced agreed that the commissioner gave D. O. Williams thirty minutes after the first sale to make a note and bond for the amount of his bid, with good and sufficient sureties thereon, and that he and his brother, F. E. Williams, returned in company with W. R. Lane, vice-president of the Planters' National Bank, after the lands had been sold the second time. D. O. Williams and F. E. Williams testified that Mr. Lane came down with them to take care of the note, and did not sign it because Judge Cunningham told him it was too late, as the land had been sold again five minutes before their arrival. Judge Cunningham testified that W. R. Lane spoke to him about the matter, and that he told him the facts about the sale of the property, whereupon Lane remarked that he would have nothing to do with it.

D. O. and F. E. Williams testified, in substance, that they returned within thirty minutes after the sale, with the note unsigned, but that they had made arrangements with Mrs. Fairbelle Mitchell (formerly Byrkett) to sign the note that evening, but found the property had been sold; that they obtained the signature of Mrs. Mitchell and her husband to the note the next day, but did not present it to the commissioner because he had again sold the property; that he and his brother signed the note the afternoon the sale was made. D. O. Williams testified that he purchased the land for himself, but his brother contradicted this statement, saying that he had bought it for him. W. A. Cunningham and Charles Jones testified, in substance, that D. O. and F. E. Williams did not return until about three o'clock; that the first sale occurred about 1:30 or 2 o'clock p. m.; that the commissioner waited until five minutes before 3 o'clock, at which

time W. A. Cunningham requested him to sell the property again, so that the sale would be between the hours for judicial sales of land; that Jones bid the property in at the second sale for $1,025, which was reported to and confirmed by the court at once; that D. O. Williams did not return within the time required and cover his bid with a note properly secured, and did not offer such a note to the commissioner at all.

The note executed by the commissioner and signed by D. O. and F. E. Williams and the Mitchells was introduced in evidence. The solvency of the Mitchells was not shown, but the solvency of Lane was admitted.

The testimony showed that the property was worth about $5,000, and that Clay Sloan had a prior lien or mortgage thereon for about $2,500.

At the first sale in May, 1921, Charles Jones bid $2,000 for the property, subject to the first mortgage, which amounted at that time to about $2,000. Sloan, after that time, paid some taxes on the land, which increased his lien, including interest, to about $2,500, in September, 1922. Between the sales in May, 1921, and September, 1922, a barn, worth about $500, situated on the place, had been burned.

After a careful reading of the testimony we are unable to say the chancellor abused his discretion in refusing to set the sale aside. The first sale had been set aside in order to give F. E. Williams an opportunity to redeem the land. We think F. E. Williams was the real purchaser at the second sale. He went to the sale for the purpose of buying in the land. He should have been prepared to make a good note for the purchase money. He was not, but was given thirty minutes in which to do so after the sale. The chancellor found that he did not return with a good and sufficient note within the time accorded him. We think the finding of the chancellor in this respect is supported by the weight of the evidence. It is admitted that the note was not signed by any one on that day except the Williams brothers. It was not signed

until the next day by the Mitchells. It is not shown that the Mitchells were solvent. Lane never signed the note. It is a disputed question as to whether he intended to do so. He was not placed upon the witness stand by appellants. Cunningham testified that he did nothing to keep him from signing the note; that he simply stated the facts to him, after which he remarked that he did not intend to sign the note. The fact that the sale was immediately reported to and confirmed by the court in no way injured appellants, as the court heard their motion to set aside the confirmation and sale just as if there had been no confirmation of the sale. The inadequacy of the price bid is not gross. According to the testimony the property was not worth over $5,000, and, including the prior lien, it sold for nearly $4,000. It cannot be said that it sold for a price so inadequate as to shock one's conscience or to amount to a fraud. The Williams were not diligent, and we cannot say the circumstances surrounding the sale, taken in connection with the price for which the property sold, amounted to a fraud upon their rights.

No error appearing, the judgment is affirmed.